**Opinion issued February 14, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01126-CR

————————————

**ATHA ALBERT DOBBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 21st District Court
Washington County, Texas
Trial Court Case No. 15,911

**O P I N I O N**

A jury found appellant Atha Albert Dobbs guilty of the offense of resisting arrest.[1] To reach the guilty finding, the jury found that appellant had used a deadly weapon, namely, a firearm, to resist arrest, thereby elevating the offense to a third-degree felony.[2] The jury assessed appellant's punishment at six years in prison and an $8,000 fine.

On appeal, appellant raises one issue. He contends that the evidence was not sufficient to support the judgment of conviction. Because we hold that the evidence was sufficient, we affirm.

**Background Summary**

Appellant lived with his wife, Dawn, and her daughters, S.M. and K.M. On September 18, 2010, 16-year-old S.M. told Dawn that appellant had been sexually abusing her for several years. Dawn and her two daughters moved out the next day, leaving appellant alone at the house.

Dawn contacted the Washington County Sherriff's Department and reported S.M.'s allegations of sexual abuse. A warrant was issued for appellant's arrest for

---

[1]    *See* TEX. PENAL CODE ANN. § 38.03(a) (Vernon 2011).

[2]    *See id.* § 38.03(d); *see also id.* § 12.34 (Vernon 2011) (defining punishment range for third-degree felony offense).

2

the offense of sexual assault of a child. Dawn told the sheriff's office that she believed appellant may resist arrest.

Five sheriff's deputies were dispatched to appellant's house to arrest him. Appellant was looking out his kitchen window when he saw the deputies approaching the house. He went to his gun cabinet and retrieved a loaded pistol. Two of the deputies went to the back of the house, two to the side, and one officer, Deputy K. Kokemoor, went to the front door, which led into the kitchen.

When he got to the door, Deputy Kokemoor could see inside the house. He saw appellant walking straight toward the door. Appellant had a gun in his hand. One of the other officers had also seen the pistol and yelled, "Gun!" Each of the deputies pulled out his service weapon and aimed it at appellant. Deputy Kokemoor yelled at appellant, instructing him to put down the gun. Appellant did not comply.

Appellant walked to the door. He was pointing the gun at his own temple. Deputy Kokemoor could not hear what appellant was saying, but it appeared to the officer that appellant was mouthing words to the effect that he was intending to kill himself. Deputy Kokemoor kept his gun trained on appellant but did not fire his weapon.

Appellant then turned around and began walking to the interior of the house. Deputy Kokemoor lowered his gun and pulled out his taser. Deputy Kokemoor went into the house. Appellant turned and looked at Deputy Kokemoor. When appellant began to run into the living room, Deputy Kokemoor shot appellant with a taser.

Appellant fell to the floor on to top of his gun. Deputy Kokemoor instructed appellant to put his hands behind his back. Because appellant did not comply, Deputy Kokemoor pulled the trigger on the taser a second time. Deputy Kokemoor kicked appellant's gun away from him. The officer discovered that the gun was loaded. It had a bullet in the chamber.

The officers took appellant into custody. Appellant was charged with three felony offenses: (1) continuous sexual abuse of a child under the age of 14 years; (2) aggravated sexual assault; and (3) resisting arrest. With respect to the resisting arrest charge, the State alleged that appellant had used a deadly weapon, namely, a firearm, in resisting arrest, making the offense a third-degree felony.

The State offered a number of witnesses at trial, including Dawn, S.M., and Deputy Kokemoor. Appellant testified in his own defense.

4

The jury was unable to reach a unanimous verdict on the charged offenses of continuous sexual abuse of a child and aggravated sexual assault. The trial court declared a mistrial with respect to those two charges.

The jury did find appellant guilty of the third-degree felony offense of resisting arrest. Following the punishment phase, the jury assessed appellant's punishment at six years in prison and an $8,000 fine. This appeal followed.

## Sufficiency of the Evidence

In one issue, appellant contends that the evidence introduced at trial is legally insufficient to support his conviction for the offense of resisting arrest.

### A.    Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See id.* Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that

5

each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt

6

of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.     Elements of the Offense**

To convict an accused for resisting arrest, the State must prove (1) the accused intentionally (2) prevented or obstructed (3) a person he knows is a peace officer (4) from effecting an arrest (5) of himself or another (6) by using force against the peace officer or another. *See* TEX. PENAL CODE § 38.03(a) (Vernon 2011). The offense of resisting arrest is elevated to a felony if the defendant uses a deadly weapon to resist arrest. *See id.* § 38.03(d).

The indictment in this case read, in part, as follows:

[O]n or about the 22d day of September, A.D. 2010, [Atha Albert Dobbs] . . . did intentionally prevent or obstruct Kyle Kokemoor, a person the defendant knew to be a peace officer, from effecting an arrest of the defendant, and the defendant did then and there use a deadly weapon, to-wit: a firearm, to resist, prevent, or obstruct the arrest by exhibiting a firearm, against the peace and dignity of the State.

7

## C. Analysis

On appeal, appellant contends that the evidence is insufficient to support the judgment of conviction because the State failed to prove that he "used force against" Deputy Kokemoor, an element necessary to establish the offense of resisting arrest. *See id.* § 38.03(a).

Appellant asserts that "merely exhibiting a firearm" cannot constitute a use of force against a peace officer. Under the unique circumstances of this case, we disagree.

Appellant testified that, after his wife told him that she had gone to the police and reported the sexual assault allegations, he suspected that the police would be coming to arrest him. Appellant acknowledged that he took a loaded pistol from his gun cabinet in response to seeing the sheriff's deputies in his driveway. He testified that he retrieved the gun because he was "scared." Appellant stated that he feared he would lose everything that he had worked so hard in his life to obtain. He also testified that he did not have "the nerve" to shoot himself.

Deputy Kokemoor testified that, upon his arrival at the scene, he instructed appellant to drop the gun, but appellant did not comply. Instead, with gun in hand, appellant walked straight to the door where Deputy Kokemoor was standing and

8

looked at the deputy. Appellant came close to the other side of the door and looked at Deputy Kokemoor, who noted that appellant held the gun to his own temple and "mouthed the words, 'I'm going to kill myself.'" Deputy Kokemoor testified that, at the time, he believed appellant was attempting "suicide by cop"; that is, appellant wanted to force the officers to shoot him.

When asked why he did not shoot appellant, Deputy Kokemoor testified that he did not believe the gun was a threat; however, the deputy clarified that he continued to keep his gun aimed at appellant and would have shot appellant had appellant turned the gun toward him.

Citing Deputy Kokemoor's testimony, appellant contends that "at no point in the testimony was there any recitation of a physical struggle or any use of force applied by Appellant directed towards the officers during the arrest." Appellant also points out that he made no verbal threats to the officers.

Appellant also relies heavily on Deputy Kokemoor's testimony concerning appellant's actions of pointing the gun at his own temple. He emphasizes that appellant did not, at any time, point the gun directly at the deputies. He further relies on Deputy Kokemoor's testimony that the deputy did not shoot appellant because the deputy did not believe the gun was a threat. Appellant asserts that

"merely exhibiting a firearm," as alleged in the indictment, is not sufficient to constitute use of force against a peace officer.[3]

The Penal Code does not define the phrase "using force against," as found in section 38.03(a); nor does it define those words individually. As appellant correctly points out, courts have held that passive noncooperation does not constitute force against an officer. *See Sheehan v. State*, 201 S.W.3d 820, 822 (Tex. App.—Waco 2006, no pet.) (holding passive noncooperation of pulling arms to chest and interlocking them posed no danger to arresting officers and did not constitute use of force as element of resisting arrest); *see also Pumphrey v. State*, 245 S.W.3d 85, 89 n.4 (Tex. App.—Texarkana 2008, pet. ref'd) (describing "mere passive resistance" or "simple noncooperation" as sitting with arms crossed, crawling away, or the like).

Nonetheless, an action, that, when viewed in isolation, may not rise to the level of resisting arrest, may constitute the use of force in certain situations. *See*

---

[3] In his brief, appellant is critical of the language of the indictment. He intimates that the "exhibiting a firearm" language was inadequate to allege the offense of resisting arrest because the indictment failed to allege that he used force against the arresting officer. Appellant does not, however, formally raise this as an issue on appeal. Moreover, a defendant must object to a defect in form or substance in the indictment before trial or he waives the right to object on appeal. TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005). The record does not show that appellant objected to the indictment. Thus, appellant has waived his right to complain that the indictment inadequately alleged the elements of resisting arrest. *See Gary v. State*, 195 S.W.3d 339, 340 (Tex. App.—Waco 2006, no pet.).

*Gary v. State*, 195 S.W.3d 339, 340 (Tex. App.—Waco 2006, no pet.). Courts have held that a person can forcefully resist an arrest without successfully making physical contact with the officer. *See Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd); *see also Haliburton v. State*, 80 S.W.3d 309, 312–13 (Tex. App.—Fort Worth 2002, no pet.) (holding that defendant's act of "kicking at" an officer constituted force even though the kick did not connect). In other cases, actions which endanger an officer may constitute "use of force against." *See, e.g., Gary*, 195 S.W.3d at 341 (holding that releasing a vicious dog to attack an officer was use of force, even though dog never made contact with officer). Acts threatening the officer with imminent bodily harm have also been held to be use of force against the officer. *See Campbell v. State*, 128 S.W.3d 662, 671 (Tex. App.—Waco 2003, no pet.) (holding evidence showed use of force when defendant had pulled gun from his pocket and yelled "get back").

Courts have made clear that section 38.03 does not require action *directed at* or *toward* an officer; rather, it only requires force exerted in opposition to the officer's efforts at making an arrest. *See Pumphrey*, 245 S.W.3d 90–91; *see Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.) (reaching conclusion that term "against" means "opposition to"). With respect to the term "force," courts have applied its common and ordinary meaning as defined in

11

dictionaries. *See Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004) (explaining that, to determine plain meaning of word, courts look to dictionaries). The Fort Worth Court of Appeals noted that Black's Law Dictionary defines "force" as "[p]ower dynamically considered, that is, in motion or in action; constraining power, compulsion; strength directed to an end." *Haliburton*, 80 S.W.3d at 313 (quoting BLACK'S LAW DICTIONARY 330 (5th ed. 1983)); *see Rabe v. State*, No. 13–10–00419–CR, 2012 WL 2052147, at *3 (Tex. App.—Corpus Christi June 7, 2012, no pet.) (mem. op.) (not designated for pub.) (noting that Webster's Dictionary defines "force" as "violence, compulsion, or constraint exerted upon or against a person or thing"). Black's Dictionary also defines force to include both actual force and constructive force. *See* BLACK'S LAW DICTIONARY 656 (3d ed. 1990) (describing constructive force, in part, as "[t]hreats and intimidation to gain control or prevent resistance").

Applying the principles set forth in the foregoing authorities, we conclude that the evidence was sufficient to prove that appellant used force against Deputy Kokemoor. In reaching this conclusion, we need not determine whether "merely exhibiting a firearm" would be sufficient to support a conviction for resisting arrest. The totality of appellant's actions went beyond merely exhibiting a firearm.

Appellant's act of exhibiting the gun was accompanied by other conduct that, within the context of the officers' effectuating the arrest, constituted force.

To reiterate, appellant retrieved a gun in direct response to the officers' arrival to arrest him for the offense of sexual assault of a child. Appellant displayed the gun as he walked toward Deputy Kokemoor. Appellant indicated his awareness of Deputy Kokemoor by looking at him. Appellant refused to put the gun down despite being instructed to do so. Appellant continued walking until he was close to Deputy Kokemoor on the other side of the door. The officers could not arrest appellant because he would not voluntarily relinquish the gun. Appellant dropped the gun, and the officers were able to effectuate the arrest, only after appellant had been tasered twice.

As appellant points out, Deputy Kokemoor testified that he did not shoot appellant with his firearm because he did not feel threatened by appellant's gun. Nonetheless, Deputy Kokemoor further testified that he felt compelled to keep his gun trained on appellant. He stated that, at the time, he believed it was a "suicide by cop" situation. The jury could have reasonably inferred that both appellant and Deputy Kokemoor knew that it would take minimal effort for appellant to turn the gun toward Deputy Kokemoor and for it to become a lethal situation. *See Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.) (explaining that

13

"jurors [are] free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence").

Viewed objectively, the evidence supports an inference that appellant's conduct was "in opposition" to the officers' effectuating his arrest. An officer cannot effectuate an arrest when the person to be arrested is holding a gun and refusing to surrender it. Even when a suspect is not pointing the gun directly at the officer, the situation is a volatile one with life and death consequences. The officer's testimony indicated that he believed it necessary to taser appellant to subdue him and to effectuate the arrest. Until that point, appellant was using his gun to intimidate the officers and to control the situation.

The jury could have reasonably inferred that appellant knew the officers would not approach him while he was holding the gun. Such conduct is designed to oppose the officer's ability to complete the arrest. Thus, the jury could have found that his conduct was "against" the officer. *See Pumphrey*, 245 S.W.3d 90–91; *Hopper*, 86 S.W.3d at 679.

Significantly, although section 38.03(a) requires force, nothing in the statute requires that the force exerted against the officer be violent or make physical contact with the officer. The commonly understood definition of "force"

14

encompasses acts of compulsion or coercion unaccompanied by actual acts of physical violence. *See Haliburton*, 80 S.W.3d at 313 (adopting definition of "force" that includes "compulsion").

Here, the jury could have inferred that appellant's conduct created a volatile and provocative situation, placing all involved in danger of imminent bodily harm. In creating such a situation, appellant's conduct was an effective means to repel the arrest. The jury could have found that appellant's acts were acts of compulsion and coercion designed to prevent the arrest by inducing Deputy Kokemoor into fearing for his own personal safety and for the safety of the other officers. Such an act of compulsion and coercion in opposition to the officers' effectuating the arrest is an act of force.

Viewing all the evidence, direct and circumstantial, in the light most favorable to the jury verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, the essential element of use of force to support its finding that appellant was guilty of the offense of resisting arrest. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We hold that the evidence is sufficient to support the judgment of conviction.

We overrule appellant's sole issue.

15

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Justice Sharp, dissenting.

Publish.   TEX. R. APP. P. 47.2(b).

16