

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0259-13

**ATHA ALBERT DOBBS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### WASHINGTON COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion.

### O P I N I O N

In his petition for discretionary review, Atha Albert Dobbs, appellant, challenges the

sufficiency of the evidence to sustain his conviction for resisting arrest with a deadly weapon.

*See* TEX. PENAL CODE § 38.03(a), (d). A jury convicted appellant of that offense after he,

during an attempt by police officers to arrest him at his home, exhibited a firearm, refused

to put the weapon down when ordered to do so, and expressed his intent to use the firearm

to shoot himself, but never threatened to use the weapon against the officers. Because we conclude that no rational juror could have found that appellant's conduct constituted a use of force against a peace officer as required by the resisting-arrest statute, we hold that the evidence is insufficient to sustain appellant's conviction. We reverse the judgment of the court of appeals and render a judgment of acquittal.

## I. Background

In September 2010, appellant was living with his wife, Dawn, and her two daughters in Washington County when one of the daughters told Dawn that appellant had been sexually abusing her for several years. Dawn and her daughters moved out of the house the following day. Dawn contacted the police to report her daughter's allegations, and a warrant was issued for appellant's arrest.

Because Dawn had indicated to police that appellant might resist arrest or attempt to harm himself, five sheriff's deputies were dispatched to his house to carry out the warrant. Appellant saw the deputies approach the house through the kitchen window, and he retrieved a loaded pistol out of his gun cabinet. The deputies surrounded the house and could see inside through the windows. Two of the deputies went to the back of the house, two to the side, and one officer, Deputy Kokemoor, approached the front door. From his position, Kokemoor could see appellant walking toward the door with a gun in his hand. One officer shouted to the others that appellant was holding a gun. The officers drew their weapons, and Kokemoor ordered appellant to put down the gun. Appellant did not comply. Instead, he

pointed the gun at his own temple. Although Kokemoor could not hear what appellant was saying, it appeared to him that appellant was repeatedly mouthing the words, "I'm going to kill myself."

Appellant then turned around and retreated deeper into the house. Kokemoor, believing that appellant was suicidal and not a threat to the officers, lowered his gun, pulled out his taser, and entered the house. Upon realizing that Kokemoor had entered, appellant began to run into the living room, where the deputy shot him with the taser. Appellant then fell to the floor, pinning one hand beneath himself while his other hand was still holding the gun. When appellant did not comply with Kokemoor's instruction to put his hands behind his back, the deputy tasered appellant a second time and then kicked the gun out of appellant's hand. Appellant was arrested and transported to jail.

Appellant was charged with continuous sexual abuse of a young child, aggravated sexual assault, and resisting arrest. The resisting-arrest offense was elevated from a misdemeanor to a third-degree felony because the State alleged that appellant had used a deadly weapon during commission of the offense.[1] At trial, the jury was unable to reach a unanimous verdict on the continuous-sexual-abuse and aggravated-sexual-assault offenses, and the trial court declared a mistrial with respect to those two offenses. However, the jury

---

[1] *See* TEX. PENAL CODE § 38.03(d). With respect to the offense of resisting arrest, appellant was indicted for "intentionally prevent[ing] or obstruct[ing] Kyle Kokemoor, a person the defendant knew to be a peace officer, from effecting an arrest of the defendant, and the defendant did then and there use a deadly weapon, to wit: a firearm, to resist, prevent, or obstruct the arrest by exhibiting a firearm."

did find appellant guilty of resisting arrest with a deadly weapon, and it sentenced him to six years in prison and assessed an $8,000 fine.

On appeal, appellant argued that the evidence was insufficient to sustain his conviction because the State failed to prove that he "us[ed] force against" a peace officer within the meaning of that phrase as it appears in the resisting-arrest statute. *See* TEX. PENAL CODE § 38.03(a); *Dobbs v. State*, No. 01-11-01126-CR, 2013 WL 561485, at *6 (Tex. App.—Houston [1st Dist.] Feb. 14, 2013). Specifically, appellant contended that he had merely exhibited a firearm, and that such conduct cannot constitute a use of force against a peace officer. The court of appeals disagreed. Regarding the element of force, the court of appeals observed that "a person can forcefully resist an arrest without successfully making physical contact with the officer," and it further observed that "actions which endanger an officer" or that threaten an officer with imminent bodily injury may constitute use of force. *Dobbs*, 2013 WL 561485, at *4. With respect to the meaning of the word "against" as it is used in the statute, the court of appeals stated that "[c]ourts have made it clear that Section 38.03 does not require action *directed at* or *toward* an officer; rather, it only requires force exerted in opposition to the officer's efforts at making an arrest." *Id*. (citing *Pumphrey v. State*, 245 S.W.3d 85, 90-91 (Tex. App.—Texarkana 2008, pet. ref'd); *Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.)).

Applying those principles to the facts of appellant's case, the court of appeals concluded that the evidence was sufficient to support his conviction for resisting arrest. *Id*.

at *5-6. It explained,

> Appellant retrieved a gun in direct response to the officers' arrival to arrest him for the offense of sexual assault of a child. Appellant displayed the gun as he walked toward Deputy Kokemoor. . . . Appellant refused to put the gun down despite being instructed to do so. . . . The officers could not arrest appellant because he would not voluntarily relinquish the gun. . . . Viewed objectively, the evidence supports an inference that appellant's conduct was 'in opposition' to the officers' effectuating his arrest.

*Id*. at *5. Thus, basing its analysis on the fact that appellant's conduct was "designed to oppose the officer's ability to complete the arrest," the court concluded that "the jury could have found that his conduct was 'against' the officer." *Id*.

## II. Evidence Is Insufficient to Sustain Appellant's Conviction

In his sole ground for review, appellant asserts that the evidence is insufficient to prove that he "us[ed] force against [a] peace officer" as required by the resisting-arrest statute. *See* TEX. PENAL CODE § 38.03(a). We agree that the evidence is insufficient to sustain the jury's finding that appellant used force against a peace officer within the meaning of the resisting-arrest statute. *Id*.

### A. Standard of Review

We review the sufficiency of the evidence to establish the elements of a criminal offense under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt. *Jackson*, 443 U.S. at 318-19; *see also Adames v. State*, 353 S.W.3d 854, 859-60 (Tex. Crim. App. 2011). Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *See Jackson*, 443 U.S. at 319. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.*; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (observing that it is the fact-finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (quoting *Jackson*, 443 U.S. at 319). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

When we interpret enactments of the Legislature, "we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (citations omitted). We focus our analysis on the literal text of the statute and "attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id*. Where that language is clear and unambiguous, we will give effect to its plain meaning, unless that meaning would lead to absurd consequences that the Legislature

could not have intended.  *Id.*

**B.  Resisting-Arrest Statute Requires Proof of Force Directed At or In Opposition to Officer**

Appellant's sufficiency challenge necessarily requires us to determine what the Legislature would have intended by its use of the phrase "using force against the peace officer or another."  *See* TEX. PENAL CODE § 38.03(a); *see also Boykin*, 818 S.W.2d at 785. The complete statutory elements of the offense of resisting arrest are that a person:

(1) "intentionally prevents or obstructs"

(2) "a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction"

(3) "from effecting an arrest, search, or transportation of the actor or another"

(4) "by using force against the peace officer or another."

TEX. PENAL CODE § 38.03(a).  The offense is elevated from a Class A misdemeanor to a third-degree felony if "the actor uses a deadly weapon to resist the arrest or search." *Id*. § 38.03(d).

The terms "force" and "against" are not defined by the Penal Code, and so we interpret those terms in accordance with their ordinary meaning.  *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012) ("Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite.").  In relevant part, the meaning of the word "force" is "violence,

compulsion, or constraint exerted upon or against a person or thing." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 455 (10th ed. 1996); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY 887 (3d ed. 2002) (further defining force as "violence or such threat or display of physical aggression toward a person as reasonably inspires fear of pain, bodily harm or death"). The term "against" means "in opposition or hostility to"; "contrary to"; "directly opposite"; "in the direction of and into contact with"; or "in a direction opposite to the motion or course of." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 21 (10th ed. 1996).

Finding the meanings of these statutory terms plain and reading them in conjunction with the other statutory terms, we conclude that the Legislature would have understood the phrase "using force against the peace officer or another" as meaning violence or physical aggression, or an immediate threat thereof, in the direction of and/or into contact with, or in opposition or hostility to, a peace officer or another. *See id.* at 21, 455.

The court of appeals, relying primarily on case law, interpreted the statute's use of the word "against" as "not requir[ing] action *directed at* or *toward* an officer; rather, it only requires force exerted in opposition to the officer's efforts at making an arrest." *Dobbs*, 2013 WL 561485, at *4. The court of appeals further reasoned that forceful actions taken in opposition to the officer's overall goal of bringing about an arrest, even if not physically directed at an officer, would fall within this definition of "against." *See id.* at *4-5. But, as noted above, the statutory language plainly requires a use of force directed "against" the officer himself, not against his broader goal of effectuating an arrest. *See* TEX. PENAL CODE

§ 38.03(a). The Legislature's inclusion of the word "against" before the words "the peace officer" signifies that it intended to require proof that a defendant not only generally used force in the presence of the officer, but also that he specifically used force in the direction of and/or in contact with, or in hostility or opposition to, the officer. *See id.* The statutory language thus requires not merely a showing that the actor engaged in some conduct designed to delay his arrest or to make his arrest more difficult, but rather that he have used some kind of force in opposition to, in the direction of, or in contact with the officer himself for the purpose of preventing an arrest. *See id.* Were we to interpret the phrase "against the peace officer" as encompassing any and all force employed for the purpose of opposing the officer's goal of effectuating an arrest, we would effectively render that phrase superfluous because the other statutory terms already require proof that the actor prevented or obstructed an arrest through his use of force. *See id.* We are bound to give meaning to each phrase and word within a statute. *See Harris v. State,* 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) (We must "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible") (quotations omitted); *see also Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999) (court "cannot interpret a phrase within a statute in isolation"); *Thomas v. State*, 919 S.W.2d 427, 430 (Tex. Crim. App. 1996) ("We always strive to give words and phrases meaning within the context of the larger provision.").

In support of its position that the word "against" can encompass force exerted in

opposition to the officer's goal of making an arrest, even if that force is not physically directed in opposition to or in the direction of the officer himself, the court of appeals cited *Pumphrey*, 245 S.W.3d at 90, and *Hopper*, 86 S.W.3d at 679-80. We note, however, that those cases are consistent with requiring some showing of force that is actually directed against the officer in the sense that it is either in opposition to the officer's physical efforts at making an arrest, such as a forceful pulling away from the officer, or is physically directed at or toward the officer, such as hitting or punching the officer. *See Pumphrey*, 245 S.W.3d at 89-90 (noting that Pumphrey had "pulled" and "jerked" against the officer's restraining efforts applied to her wrists, and concluding that, based on the record, "the fact-finder could have concluded Pumphrey and the officer struggled for at least a few seconds"); *Hopper*, 86 S.W.3d at 679-80 (noting that Hopper had struck officer in chest with his fist and kicked both officers during struggle, and noting that statute plainly encompasses force that is used "to shake off an officer's detaining grip" or that is used when a person "pulls his arm away in a sufficiently violent manner and with enough force to throw the arresting officer to the ground"). And, although the court of appeals cited *Pumphrey* for the proposition that Section 38.03 does "not require action directed at or toward an officer, just force exerted in opposition to his or her efforts at making an arrest," the *Pumphrey* court's explanation of the law is more clearly expressed in the paragraph that immediately followed that statement:

> The distinction between force directed toward the officer and force in opposition to, but away from, the officer can result in almost metaphysical analyses. Must the principal motion of the defendant be toward the officer? What if he or she moves mostly away from the officer, but some portion of his

or her body moves toward the officer, as in flailing arms? What if there is a turning or twisting so that at least part of the body moves toward the officer? Must the actions of the defendant actually endanger the officer? How likely must that danger be? What if the "simple" pulling away is so forceful that it causes the officer injury or causes the officer to lose his or her balance? Is that enough? What if the pulling away can be characterized as a struggling with the officer? Is there a distinction between a forceful or violent pulling away and a more casual pulling away? Can one "shake off" an officer's grip without moving toward the officer? Is that force directed toward the officer?

*Pumphrey*, 245 S.W.3d at 91. Thus, in concluding that "'against' as used by Section 38.03 of the Texas Penal Code does not require force directed *at or toward* the officer, but also is met with any force exerted *in opposition to*, but away from, the officer, such as a simple pulling away," the court in *Pumphrey* clearly indicated that there must be an act directed at or in opposition to the officer himself and his physical efforts to make an arrest, as opposed to some metaphorical or metaphysical opposition to his overall goal of bringing about an arrest. *See id.* The *Pumphrey* court's statement, viewed in the broader context of the facts and arguments presented in that case, was merely intended to clarify that a forceful act of pulling away from an officer would also be included within the statutory phrase "using force against" the officer. *See id.*; *see also* TEX. PENAL CODE § 38.03(a).

Had the Legislature intended to permit any use of force in the presence of the officer to constitute resisting arrest, it could have easily excluded the term "against" from the statute, or, alternatively, it could have provided for penalties for exhibiting a deadly weapon in the presence of an officer attempting to make an arrest. There may be good policy reasons for the Legislature to draft such a statute, but, as long as the meaning of a statute is not

ambiguous or the application absurd, we are bound to apply the plain language of the statute as it is written, which in this case requires not only the use of force but also proof that the force was used against the officer. *See* TEX. PENAL CODE § 38.03(a); *see also Boykin,* 818 S.W.2d at 785.

We conclude that a use of force "against" an officer must necessarily be in opposition to, or in the direction of and/or in contact with, the officer himself, meaning the officer's physical person. A use of force that is against the officer's goal of effectuating an arrest in the sense that it is hostile to or contrary to that goal, but that is not directed at or in opposition to the officer, is not covered by the plain terms of the statute. *See* TEX. PENAL CODE § 38.03(a); *see also Boykin,* 818 S.W.2d at 785.

**C. No Rational Juror Could Have Found Appellant Used Force Against A Peace Officer**

Applying these principles to the facts of this case, we conclude that the evidence is insufficient to sustain appellant's resisting-arrest conviction. *See Jackson*, 443 U.S. at 318-19. Here, the record indicates that appellant at all times either held the gun at his side or pointed it at himself, and never at officers or anyone else. The record is devoid of any evidence to indicate that appellant threatened to use any kind of force against the officers, but instead shows that he threatened only to shoot himself. Kokemoor indicated in his testimony that he did not feel threatened by appellant at any point, and no evidence in the record suggests that appellant directed any threat to or against Kokemoor or any of the other officers.

It is true that appellant's conduct in displaying the gun in the presence of officers and refusing to put the gun down when ordered to do so could rationally be found to constitute a use of "force" within the meaning of the statute, but without an additional showing that the force was directed at or in opposition to the officers, he cannot reasonably be said to have used force "against" a peace officer. Furthermore, although appellant's refusal to put down the gun when ordered to do so had the likely effect of delaying his arrest, that refusal cannot reasonably be understood as constituting a use of force against the officer by virtue of its being opposed to the officer's goal of making an arrest. Likewise, appellant's efforts to manipulate the situation and intimidate officers for the purpose of delaying his arrest by threatening to shoot himself cannot reasonably be found to constitute a use of force against officers.

## III. Conclusion

Because he did not use force "against" a peace officer within the meaning of the resisting-arrest statute, we hold that the evidence is insufficient to sustain appellant's conviction. We reverse the judgment of the court of appeals and render a judgment of acquittal.

Delivered: June 25, 2014

Publish