

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00214-CR

ROCKY AARON IRELAND                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
### TRIAL COURT NO. 1480679

----------

### MEMORANDUM OPINION[1]

----------

A jury convicted Rocky Aaron Ireland of resisting arrest, a class A misdemeanor. In accord with the parties' post-verdict agreement, the trial court sentenced Ireland to 180 days in jail, probated for 20 months, and a $1,000 fine. In one point, Ireland asserts that the evidence is insufficient to support his conviction. We affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## Evidence

### *Officers Ramirez and Magallon*

Officers Elisa Ramirez and Christian Magallon testified that on December 18, 2016, they were dispatched to a bar where a caller—Ireland—alleged that he had been assaulted. Officer Magallon acted as Officer Ramirez's backup. When they arrived at the bar, Ireland was no longer there; after obtaining Ireland's home address, they went there and found him.

At his home, Ireland told Officer Ramirez that he was assaulted at the bar by two men he did not know, and although Officer Ramirez thought that Ireland's story did not make any sense, she returned to the bar anyway to gather more information. Before leaving Ireland, she and Officer Magallon instructed him to remain in his house. Both officers described Ireland as being intoxicated.

After returning to the bar and talking to the bartender, they determined that no assault had occurred, that Ireland had been the aggressor, and that the bar's staff and patrons had merely escorted Ireland out of the bar. So the two officers returned to Ireland's home where, upon arriving, they saw Ireland standing in the street, fumbling with his keys, and trying to get into his car. Ireland—who still seemed drunk—explained that he wanted to drive back to the bar to identify his attackers. Officer Ramirez described Ireland as swaying back and forth, smelling of alcohol, slurring his speech, and occasionally being a little incoherent. Because Ireland was putting himself and others in danger by wanting to drive, Officer Ramirez arrested him for public intoxication.

Officer Magallon, who described Ireland as initially compliant, put him in the back of Officer Ramirez's squad car, and Officer Ramirez drove Ireland to the Fort Worth jail. Officer Ramirez described Ireland as "normal" when first handcuffed, but she said that as time passed, he became irate, loud, and angry, using both English and Spanish profanity. While en route to the jail, she radioed to ask Officer Magallon to help her once they arrived. Officer Ramirez testified that she wanted Officer Magallon's help because Ireland was already upset and irate and because she did not know how Ireland was going to react.

Once at the jail, Officer Ramirez and Officer Magallon, who had arrived in a separate squad car, helped Ireland out of the car and then escorted him to the jail. Officer Magallon testified that it was after arriving at the jail that he noticed Ireland was very irate, cursing, and yelling loudly in the back seat of Officer Ramirez's car. The walk from the car to the jail was perhaps 40 yards; both officers, concerned that Ireland might fall, held onto him the entire way. Ireland, however, kept pulling away. Officer Ramirez did not think that Ireland was simply stumbling.

At one point, Ireland turned away from Officer Magallon and faced Officer Ramirez, which caused a "jerk" and prevented them from walking smoothly forward. Officer Magallon described Ireland as stopping completely, jerking away from him—causing Officer Magallon to lose his grip—and turning toward Officer Ramirez. Officer Magallon elaborated: "I had a firm grip on his arm. And when I

3

say I lost my grip, I mean I completely lost control of Mr. Ireland because of the way he pulled away from me."

Officer Magallon maintained that Ireland intentionally jerked away. He acknowledged that Officer Ramirez's body-cam video did not show his hand coming off Ireland.

Officer Ramirez testified that both she and Officer Magallon tried to regain control of Ireland so he would not fall or try to get away. She described Officer Magallon's responding by giving Ireland an open-hand slap to the right side of his face to encourage Ireland to comply with their instructions. Officer Magallon stated that he gave Ireland a "distractionary slap to the face," which he described as an open-hand slap. The "distractionary strike," Officer Magallon testified, was a technique taught at the police academy. Ireland then complied. If the "distractionary slap" had not worked, Officer Magallon testified that he probably would have taken Ireland to the ground.

Officer Ramirez asserted that Ireland, by pulling away as she walked him to the jail, obstructed her ability to transport him. Her hands never lost contact with Ireland, "but he still pulled away." Officer Magallon testified, "We had to completely stop to gain re-control of him"; he agreed that Ireland had obstructed his ability to transport Ireland into the jail.

Officer Ramirez testified that Ireland was charged with resisting arrest only because he pulled away and for no other reason. She asserted that one can be charged with resisting arrest without actually breaking free.

4

Once inside the jail, Officer Ramirez handed Ireland off to other officers and saw him not complying with their instructions and being loud and belligerent.

*Officer Ramirez's body-camera video*

State's Exhibit 1 was the video from Officer Ramirez's body camera that night. It was published to the jury.

The camera appears to have been mounted on Officer Ramirez's right shoulder. When he was initially removed from the car upon arriving at the jail, Ireland, whose speech is slurred, appears to say (referring to Officer Ramirez), "Keep pendeja away!"[2] The video shows Officer Ramirez escorting Ireland from his left side and Officer Magallon escorting Ireland from his right side, but because of Officer Magallon's positioning, for the most part the camera does not pick him up.

As they walk across the parking lot, Ireland can be seen raising his right elbow; his body jerks—but from the video it is not clear whether Ireland initiated the jerk or was on the receiving end of one. Officer Magallon's "distractionary slap" is not visible due to darkness. Ireland can then be heard protesting, "I just want to walk, man. Go ahead! Beat me up the side of the f***ing head!" Ireland then says, "Beat me. Beat me, motherf***er. Beat me. Beat me, bro," and escalates by shouting, "Beat me!"

---

[2]Ireland repeatedly said "pendeja" while Officer Ramirez drove him to the jail. "Pendeja" is a vulgar Spanish insult for women. SpanishDict, http://www.spanishdict.com (last visited May 16, 2018). Ireland also used the word "bitch" frequently when addressing Officer Ramirez.

Officer Ramirez then instructs Ireland to "stop it," after which Ireland wails incoherently and, while looking at Officer Magallon, shouts, "Pendejo!"[3] Ireland follows that up with, "Beat me up, motherf***er! Beat me up, bitch! You can't beat me up one on one!" By this point all three are inside the jail, and from there, Ireland's experience goes from bad to worse, with officers eventually taking him to the floor to restrain him.

Throughout the video, both Officers Ramirez and Magallon remain calm and collected.

## Sufficiency Challenge

In his sole point, Ireland argues that the evidence was insufficient to support his conviction.

## Standard of Review

In our due-process review of evidentiary sufficiency to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[3]The masculine version of "pendeja." SpanishDict, http://www.spanishdict.com (last visited May 16, 2018).

inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The factfinder alone judges the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). And the factfinder may believe all, part, or none of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and the witnesses' credibility and then substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

## Resisting Arrest

A person commits the offense of resisting arrest "if he intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search or transportation of the actor or another by using force against the peace officer or another." Tex. Penal Code § 38.03 (West 2016). The Texas Court of Criminal Appeals has defined "force" to mean "some 'violence,

compulsion, or constraint exerted upon or against a person or thing.'" *Finley v. State*, 484 S.W.3d 926, 928 (Tex. Crim. App. 2016) (quoting *Dobbs v. State*, 434 S.W.3d 166, 171 (Tex. Crim. App. 2014)).

In *Finley*, the court of criminal appeals held that pulling away from the officers was a sufficient use of force to support a conviction for resisting arrest. *Id.* at 929. This court has also held that "[o]ne who uses force to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03." *Clement v. State*, 248 S.W.3d 791, 797 (Tex. App.— Fort Worth 2008, no pet.) (citing *Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd)).

## Discussion

Both Officers Ramirez and Magallon testified that Ireland intentionally pulled away from their grasps, and Officer Magallon further testified that Ireland successfully pulled away and broke his grip. Both testified that by pulling away, Ireland interfered with—that is, "obstructed"—their ability to transport him to the jail. The jury believed them, and we may not second-guess the jury's credibility determinations. *See Montgomery*, 369 S.W.3d at 192; *Chambers*, 805 S.W.2d at 461. This evidence, viewed in the light most favorable to the verdict, is sufficient to support the conviction. *See Jenkins*, 493 S.W.3d at 599; *Finley*, 484 S.W.3d at 929; *Clement*, 248 S.W.3d at 797.

But Ireland contends that Officer Ramirez's body-cam video contradicts Officer Magallon's testimony that he lost his grip on Ireland's arm. Citing

*Carmouche v. State*, Ireland argues that the video effectively trumps Officer Magallon's testimony. *See* 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). We disagree. Officer Ramirez's body-cam video does not affirmatively contradict her testimony or Officer Magallon's testimony. The video shows a jerk but not who initiated it. The video also does not show one way or another whether Ireland successfully broke Officer Magallon's grip. Viewed in the light most favorable to the verdict, the video is consistent with the officers' testimony that Ireland initiated the "jerk" and then, in response to Officer Magallon's "distractionary slap," tried to goad Officer Magallon into beating him. *See Sanchez v. State*, No. 02-15-00302-CR, 2016 WL 6123641, at *6 (Tex. App.—Fort Worth Oct. 20, 2016, pet. ref'd) (mem. op., not designated for publication). In any event, the standard is "pulling away," not "successfully pulling away." *See Finley*, 484 S.W.3d at 929 (describing the defendant's *attempts* to pull his arm away).

Ireland also relies on an opinion out of the El Paso Court of Appeals, *Raymond v. State*, 640 S.W.2d 678, 679 (Tex. App.—El Paso 1982, pet. ref'd), for the proposition that pulling away is insufficient to support a conviction for resisting arrest.[4] But the court later disavowed its *Raymond* analysis. *See Hopper v. State*, 86 S.W.3d 676, 679 (Tex. App.—El Paso 2002, no pet.) (discussing approvingly an intervening decision from the Waco Court of Appeals that disagreed with *Raymond*'s requirement of force directed *toward* an officer

---

[4]The *Raymond* court interpreted section 38.03 as requiring that force must be directed *toward* an officer as opposed to force used to pull away. *Id.*

and stating that it "bears repeating that Section 38.03 prohibits the use of force against an officer, not the use of force toward the officer. . . . Thus, a person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest . . . .") Furthermore, as we noted earlier, the court of criminal appeals has placed its imprimatur on the proposition that pulling away (including attempting to pull away) is sufficient. *See Finley*, 484 S.W.3d at 929.

Finally, Ireland argues that he was incapable of using violence or physical aggression because he was handcuffed at all the relevant times and incapable of using the requisite force to support a conviction under penal code section 38.03. He explains that he "can be seen to be doing little more than shrugging his arms while under the grip of the two officers; in fact, he was able to do little more as his arms were handcuffed behind his back." Ireland contends that *Finley* is distinguishable because the defendant there used far more force—the officers there ultimately had to pin Finley against a door. 484 S.W.3d at 928–29. Ireland also cites *Clement* as another example of a defendant's using far more force—to the point of kicking a car window out of its frame—than he did when resisting arrest. 248 S.W.3d at 798.

We disagree with Ireland's reading of *Finley* and *Clement*. Both cases hold that pulling away is sufficient. *See Finley*, 484 S.W.3d at 929; *Clement*, 248 S.W.3d at 797. Ireland's having his hands cuffed behind his back did not prevent him from using force to resist transportation. At best, using such force

while handcuffed simply showed questionable judgment. And after the "distractionary slap," Ireland confined his resistance to verbal insults and taunts. That Ireland, by not escalating his physical resistance after the slap, used better judgment than the *Finley* and *Clement* defendants does not negate the fact that he did indeed use force to resist his transportation to the jail.

We overrule Ireland's sole point.

## Conclusion

Having overruled Ireland's sole point, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL: SUDDERTH, C.J.; KERR and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 24, 2018