

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00057-CR

---

OSBALDO VALDEZ                                         APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1317982D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Osbaldo Valdez of aggravated robbery with a deadly weapon and assessed his punishment at ninety-nine years' confinement. The trial court sentenced him accordingly. Appellant brings a single point on appeal, challenging the sufficiency of the evidence to support the conviction.

---

[1]*See* Tex. R. App. P. 47.4.

Because the evidence is sufficient to support the jury's verdict, we affirm the trial court's judgment.

**Brief Facts**

The robbery occurred at a Metro PCS store in Fort Worth, Texas. The complainant, a store employee who was robbed, testified at Appellant's trial. She described the person who robbed her as a Hispanic man who looked like he was probably in his twenties, wearing a gray hoodie, gray sweat pants, and a black mask. The robber was carrying an automatic pistol, and at one point, he pointed the gun at the employee. The man asked for a Samsung Galaxy S3 phone and money. The complainant gave him the money in the register, but the store did not have a Galaxy S3, so he took an LG phone instead. Because the robber had been wearing a mask, the complainant could not identify him.

The store is located in a strip shopping center owned by R.H. At the time, R.H.'s office was across the street, and he was driving by the building when the robbery occurred. He saw a person wearing a gray hoodie and sweat pants come out of the building. R.H. decided to follow the man because he thought it was strange for someone to wear sweats on a hot day, and when the man saw R.H., "he started a fast trot." At the end of the building, the man took off the hoodie and threw it in the back of a car parked there. The man had on a T-shirt underneath the hoodie. The man's car was parked on a cul-de-sac, and R.H. waited until the man drove out of the cul-de sac. R.H. observed that the man drove a black car similar to a Firebird, with a spoiler on the back.

2

As the car drove past, R.H. saw the man, whom he described as a "good built" Hispanic man with short hair. The man looked to be about thirty. He had a rounded face and no tattoos or other distinguishing features. (Appellant has tattoos on his arm that can be seen when he wears a T-shirt.) R.H. was able to see part of the license plate, which he gave to the police.

The police showed R.H. a photo lineup. He initially picked out both Appellant's photograph and one that he believed was similar but ultimately chose the picture of Appellant. In court, he identified Appellant as the man he had seen.

The LG phone that was stolen during the robbery was activated the day after the robbery, and calls were made on it. Fort Worth police officers obtained a warrant for the phone records of the phone, which showed that the calls connected to Appellant's home, girlfriend, and mother.

Officers watched the house where Appellant lived and saw a car similar to the one that R.H. had described. The officers then obtained a search warrant and an arrest warrant for Appellant. The police did not find the stolen phone or the gun that was used in the robbery.

**Sufficiency of the Evidence**

In his sole point, Appellant argues that the evidence is insufficient to support his conviction. In his brief, he summarizes his complaint:

> There are three significant problems with the evidence . . . . The primary problem with the state of the evidence . . . is the inconclusive identification by R.H. The second problem . . . is that

3

the primary witness failed to note [Appellant's] obvious identifying factor—his tattoos. The third problem . . . is the lack of any physical evidence connecting him to the robbery. Therefore, under the facts of this case, a rational fact finder could not have found beyond a reasonable doubt that [Appellant] committed the offense of aggravated robbery as alleged in the indictment. Therefore, there is insufficient evidence to support his conviction. As a result, the submitted evidence [is] insufficient to support his conviction and this Court should reverse his conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The State summarizes the evidence supporting the conviction:[8]

- The robbery occurred between 1:30 p.m. and 1:40 p.m. on February 14, 2013.

- R.H. saw a suspicious man exit the Metro PCS store after 1:00 p.m. on February 14, 2013.

- R.H.'s description of the man running from the Metro PCS store matched [the complainant's] description of the robber.

- Appellant matched the general description of the robber.

- Someone activated the telephone stolen in the robbery using a false name and an address on the same street as Appellant's residence.

- The phone stolen in the robbery placed several calls to and received several calls from Appellant's mother and his girlfriend.

- Based on his analysis of the call records of the stolen phone, FBI Agent Mark Sedwick testified, "it's very likely (Appellant) was using (the stolen) phone at (his home) address."

- Appellant's car matched the car R.H. described in his testimony.

---

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[8]We have omitted all record references provided by the State and replaced the witness's name with "R.H." throughout the quoted passage.

- Appellant's license plate number corresponded with the partial plate number R.H. reported.

- Appellant's license plate's appearance corresponded with the license plate R.H. described.

- In Appellant's residence, the police found a hoodie[,] sweat pants[,] and shoes similar to those worn by the robber.

- In a pre-trial photo lineup, R.H. identified Appellant as the man he saw running from the crime scene.

- During trial, R.H. positively identified Appellant as the man he saw fleeing the Metro PCS store after the robbery.

Although R.H.'s original identification of Appellant's photograph was tentative, he was not at all tentative when he identified Appellant in court. Photographs offered by Appellant and admitted into evidence during trial reveal Appellant's tattoos on his arms and on the right side of his neck. But the T-shirt he is wearing in the admitted photographs covers his chest and back, so it is impossible to determine whether he has additional tattoos. While inside the Metro PCS store, the robber was wearing a hoodie that covered his upper body. The complainant mentioned no tattoos, but they would have been covered during the robbery. R.H. stated that he did not see any tattoos on the man he saw.

Employing the appropriate standard of review, we hold that the evidence is sufficient to support the jury's verdict that the State had proved Appellant's guilt beyond a reasonable doubt. Any inconsistencies in R.H.'s identification of

6

Appellant were a matter for the jury to weigh in its determination of guilt and do not render the evidence irrational or insufficient.[9]

**Conclusion**

We therefore overrule Appellant's sole point and affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 19, 2015

---

[9]*See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (holding jury determines weight and credibility of testimony and it is within jury's province to reconcile conflicts), *cert. denied*, 532 U.S. 944 (2001); *Montejano v. State*, No. 08-12-00235-CR, 2014 WL 4638911, at *5 (Tex. App.—El Paso Sept. 17, 2014, no pet.) (not designated for publication).

7