

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00172-CR

RICHARD FREDRICK DENSTITT                                    APPELLANT

V.

THE STATE OF TEXAS                                                STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
TRIAL COURT NO. 2011-0174M-CR

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Richard Fredrick Denstitt of aggravated sexual assault of a disabled person and assessed his punishment at sixty years' confinement. The trial court sentenced him accordingly.

Appellant brings three issues on appeal, challenging the sufficiency of the evidence that Complainant was a disabled person and arguing that the trial court

---

[1]*See* Tex. R. App. P. 47.4.

reversibly erred by denying him a speedy trial under both federal and state constitutional guarantees. Because the evidence is sufficient to support the jury's verdict and because the record reflects no denial of Appellant's right to a speedy trial, we affirm the trial court's judgment.

**Sufficiency of the Evidence of Disability**

In Appellant's first issue, he contends that the evidence is insufficient to prove that Complainant was "disabled" under the statute. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

The term "disabled individual" as used in the aggravated sexual assault statute, section 22.021 of the penal code, has the meaning assigned by section 22.04(c)(3) of the penal code.[3] Section 22.04(c)(3) currently defines a disabled individual as "a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself."[4]

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[3]Tex. Penal Code Ann. §§ 22.021(a)(2)(C), (b)(2), 22.04(c)(3) (West Supp. 2014).

[4]*Id.* § 22.04(c)(3).

2

A forensic interviewer who had interviewed Complainant testified that she believed Complainant's cognitive level was between six and ten years old. Although the forensic interviewer had reviewed no documents showing Complainant's mental age, she surmised it based on the way Complainant spelled her name, her fascination with various items in the interview room, her child-like use of terminology describing adult genitals (the term she used to describe the male genitalia was "peanuts," and her term for the female private part was "a little girl"), and her mental processing of questions "very literally" as a child would do. The forensic interviewer testified that she found Complainant to be a "mentally disabled individual" who was dependent upon other people to make all important decisions for her and who would not be able to appraise the nature of or understand sexual acts.

Complainant testified that she was twenty-six years old, lived in a group home in Houston, had graduated from high school, and was planning to go to college to become a dog groomer so she could groom her family's dogs for free. She testified that she had seizures on occasion. At the time of the assault, she had lived alone in a trailer park, and her grandfather lived across the street; he had died before the trial. She admitted that she had had voluntary sexual intercourse with Appellant more than once during their first evening together and that she took birth control pills. Her grandfather later told her that he did not like Appellant and to stay away from Appellant. She testified that when she had told Appellant that she could not have sex with him anymore

3

because her grandfather did not like him, they had spent hours having sex anyway, although she did not want to.

Complainant's uncle testified that he had known her all her life and that she had been disabled and unable to live independently her entire life. He also testified that Complainant had been declared mentally disabled by the Social Security Administration and was receiving disability payments.

The jury saw a video recording of the forensic interview and observed and listened to Complainant testify at trial.

Applying the appropriate standard of review, we hold that there was sufficient evidence from which a jury could have found beyond a reasonable doubt that Complainant was a disabled person as contemplated by section 22.04(c)(3). We overrule Appellant's first issue.

**Speedy Trial**

In his second and third issues, Appellant contends that the trial court erred by denying his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. Nineteen months before trial and while represented by counsel, Appellant filed a pro se Motion to Dismiss (Speedy Trial Motion). The trial court never heard or ruled upon said motion.

In 2013, the Texas Court of Criminal Appeals clarified that the right to a speedy trial must be preserved:

4

The preservation requirement is that "(u)nless a litigant . . . moves to avail himself of a procedural benefit . . . no such benefit inures . . . . Because the judge has no independent duty in this regard, his failure . . . isn't error about which complaint might later be made on appeal." In order to preserve error for appellate review, a defendant must make a timely request, objection, or motion in the trial court (regardless of whether or not the error complained of is constitutional). This rule applies to all but the most fundamental rights. The only exceptions are two relatively small categories of error: rights which are waivable only and denials of absolute, systemic requirements. Such errors may be raised for the first time on appeal. Neither this court nor the Supreme Court has ever clearly held that the right to a speedy trial requires preservation or cannot require preservation.

In *Barker*, the Supreme Court distinguished the speedy-trial right from typical fundamental rights, as to which the State bears the entire burden of proving that the defendant made a knowing and voluntary waiver. "We do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. Such cases have involved rights which must be exercised or waived at a specific time or under clearly identifiable circumstances . . . ."

Contrary to the appellant's assertion, *Barker* did not reject the notion that a defendant may be required to preserve a speedy-trial claim. It stated that the defendant does bear some responsibility for asserting the right. What *Barker* actually rejected was a very specific "demand-waiver" rule: one in which a defendant waives his right to a speedy trial as to any period before he demanded that his right be honored.

Just as *Barker* does not specifically address the issue, our own case law is far from consistent. We have never held that a speedy-trial right is waivable-only or systemic in nature. However, before *Marin*, we delivered many opinions that ignored the issue of preservation entirely and, in some cases, held that the defendant had not waived his rights. We did not explain if or why the right was waivable only rather than subject to the more typical rules of preservation. Further complicating matters, in recent cases, we have held that the speedy-trial right must be preserved.

5

Unfortunately, these recent opinions do not offer any justification for our change of course nor do they cite authority.

We are persuaded that the preservation requirements do apply to speedy-trial claims for several reasons. The vast majority of errors must be preserved. It is informative to look at the few rights that warrant an exception to this rule. Waivable-only rights include the right to assistance of counsel, trial by jury, and a statutorily mandated right that appointed counsel have ten days before trial to prepare. Absolute, systemic requirements include personal jurisdiction, subject-matter jurisdiction, and a penal statute's being in compliance with the separation of powers section of our state constitution.

One notable difference between these rights and the right to a speedy trial is that the other rights do not have so great an incentive for the defendant to sleep on his rights. As has been discussed, the deprivation of a speedy trial often can benefit the appellant. Without a requirement of preservation, a defendant would have great incentive not to insist upon a speedy trial and then to argue for the first time on appeal that the prosecution should be dismissed because of delay. The requirement of preservation forces the defendant to pick one strategy. He can either fail to insist upon a speedy trial and possibly reap benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for a dismissal. He may not do both.

Other policies are persuasive as well. If the appellant brings his complaint to the trial court first, the trial court can grant the appropriate remedy before the expense and other burdens of a trial (and an appeal) have been incurred.

Further, a requirement of preservation allows the trial court to develop the record sufficiently for a *Barker* analysis. At least two of the *Barker* factors (the reason for delay and the prejudice to the accused) are fact-specific inquiries and may not be readily apparent from the trial record. A requirement that the appellant assert his complaint at the trial level enables the court to hold a hearing and develop this record so that the appellate courts may more accurately assess the claim.

Our conclusion is strengthened by the fact that every court of appeals to consider the issue has upheld a preservation requirement.[5]

In the case now before this court, Appellant's pro se motion is styled "Motion to Dismiss Speedy Trial." Appellant never requested a hearing on his motion and never presented his motion to the trial court. Nor did he request a trial. Rather his motion appears to complain of tampering with official documents and conspiracy and to request dismissal of his case for failure to conduct a speedy trial. We hold that Appellant has not satisfied the preservation requirements enunciated in *Henson*.[6] We therefore overrule his second and third issues.

**Conclusion**

Having overruled Appellant's three issues, we affirm the trial court's judgment.

---

[5]*Henson v. State*, 407 S.W.3d 764, 767–69 (Tex. Crim. App. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 934 (2014).

[6]*See id.*

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 2, 2015