

# NUMBER 13-24-00454-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICHARD ARISMENDEZ GONZALES,                          Appellant,

v.

THE STATE OF TEXAS,                          Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF SAN PATRICIO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Chief Justice Tijerina**

A jury convicted appellant Richard Arismendez Gonzales of murder, a first-degree felony, tampering with evidence, a third-degree felony, and unlawful possession of firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 19.02, 37.09(c), 46.04(e). Gonzales was sentenced to ninety-nine years' imprisonment for murder, ten years for tampering with evidence, and ten years for the unlawful possession of a firearm by a

felon. The sentences were ordered to run concurrently. By three issues, Gonzales argues the evidence was insufficient to show that: (1) "he was the shooter"; (2) he knew an investigation was pending and concealed a firearm from investigation; and (3) he "possessed a firearm" in violation of Texas Penal Code § 46.04. We affirm.

## I. BACKGROUND

On July 18, 2023, Gonzales was charged with the murder of Michael Doria, tampering with physical evidence, and unlawful possession of a firearm by a felon. The following evidence was produced at trial.

Doria's grandson, Michael Anthony Doria (Michael), testified that on June 3, 2022, he was at Doria's home having dinner with Doria and his wife Margaret. According to Michael, around 7:40 p.m., there was a knock on the door shortly after the family sat down to eat. Michael testified that when Doria went to answer the door, he heard "a loud popping" sound. Michael witnessed Doria collapse onto the front door, and blood was oozing from his mouth. Doria suffered multiple gunshot wounds and died on the scene. Michael clarified that Doria was unarmed at the time of the shooting.

Margaret testified that after Doria answered the door, Doria began "yelling at [Gonzales]," and yelled, "Ya Ricky!" To Margaret, this indicated that Doria was asking Gonzales to stop. Maragaret stated that immediately after the shooting, she saw the top of Gonzales's head as he was leaving the scene. She explained that she believed Gonzales was the perpetrator and that he was also known as "Ricky G." Responding Sinton Police Department (SPD) Officer, Joshua Serrano, testified that upon arrival to the scene, Margaret cried out, "It's Ricky G!" Margaret explained to police that Gonzales and Doria had a history of ongoing disputes. Margaret testified, "[A]ll I know is his son was in

2

a really bad accident and he blamed my husband and the family." Margaret said that after Gonzales's son's accident, Doria began carrying a gun.

SPD Lieutenant Daniel Alcala obtained video surveillance from an adjacent bar, which was entered into evidence. According to Lieutenant Alcala, the video shows Gonzales at the bar drinking then walking towards Doria's home while "pulling something or he had his hand in the front area by his waistline" around 7:34 p.m. The video corroborates Lieutenant's Alcala's testimony.

Lieutenant Alcala further testified that a forensic search of Gonzales's phone revealed text messages and phone calls with a specific phone number wherein Gonzales was discussing the purchase of firearms. The messages, which were sent to Gonzales on May 20th, 27th, and May 28th of 2022, included pictures of different firearms and prices. According to Lieutenant Alcala, there were also multiple phone calls between Gonzales and the unknown number a few days before the murder.

Jeremiah Doria, Doria's son, testified that Gonzales and Doria had several unresolved issues. He further testified that Gonzales was "a character," and "he can come at you kind of . . . aggressive." According to Jeremiah, Gonzales and his son were "known to backstab or hit you from the back." Jeremiah said that Gonzales and Doria had gotten into a physical altercation, which caused the conflict between the families. Jeremiah also said that Gonzales appeared visibly distraught a short time before the murder because Gonzales's son had suffered serious physical injuries in a car accident.

Gonzales's wife, Denise Guerra, testified that, shortly after the murder occurred, she called Gonzales on his cellphone asking him to turn himself in. Guerra testified that she specifically informed Gonzales that officers were searching for him.

3

Thomas White, a forensic scientist with the Department of Public Safety Crime Lab, analyzed a gunshot residue (GSR) test that was conducted on Gonzales's hands and a single particle of GSR was found on both of Gonzales's hands. White testified that the GSR findings were "consistent with a person having recently[] discharged a firearm, been in immediate proximity of a firearm as it is being discharged [or] come into contact with a surface containing gunshot primer residue particles."

At the conclusion of trial, the jury convicted Gonzales of the charges and sentenced him as stated above. This appeal followed.

## II.   STANDARD OF REVIEW

Because Gonzales challenges the sufficiency of the evidence for all three issues, the same standard of review applies to each issue. In a sufficiency of the evidence review, the Court must view all the evidence in the light most favorable to the verdict and then determine whether a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). This standard of review applies equally to both direct and circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must defer to the jury's analysis of witness and evidence credibility. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)). The elements of the offense are measured against a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Malik v. State*, 953

4

S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

### III. MURDER

By his first issue, Gonzales argues the evidence is insufficient to show he "was the shooter as both the forensic evidence and eyewitness testimony were highly unreliable." Under the Texas Penal Code, a person commits murder when the person knowingly or intentionally causes the death of another or commits a dangerous act with the intention to cause serious bodily injury which results in the death of another. TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(1)(2).

Here, there was evidence that Gonzales and Doria had a history of ongoing physical altercations and unresolved issues. Margaret identified Gonzales as the perpetrator. Margaret testified that Doria was yelling at Gonzales right before he was shot, that Doria had specifically identified Gonzales before being shot by yelling, "Ya Ricky," and that she witnessed Gonzales leaving the scene immediately following the murder. Officers testified that when they arrived at the scene, Margaret exclaimed, "It's Ricky G!"

Video surveillance shows Gonzales stumbling out of an adjacent bar and walking towards Doria's home only eight minutes prior to Doria's death. Furthermore, Gonzales appears to be holding his waistband on his way to Doria's home. White testified that Gonzales tested positive for a GSR particle on each hand.

Gonzales argues the evidence is insufficient because Margaret claimed he was

5

wearing a white shirt, but he was wearing a black shirt at the time of the murder. However, Margaret clarified that she only saw the top of Gonzales's head when he was leaving the crime scene, and that Gonzales always wore a white shirt. Margaret testified that it was possible she was confused because Gonzales always wears a white shirt, and she was extremely distraught and disoriented when she saw Gonzales walking away from the scene. Nonetheless, it is the jury's sole province to assess the credibility of the witnesses and their testimony, and we presume the jury reconciled any conflicts in favor of its verdict. *See Joe v. State*, 663 S.W.3d 728, 732 (Tex. Crim. App. 2022).

Regardless, all the other circumstantial evidence introduced allowed for the jury to determine that Gonzales discharged a firearm and intentionally caused the death of Doria. *See Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). In analyzing the evidence in the light most favorable to the verdict, a reasonable fact finder could clearly find that Gonzales intentionally caused the death of the victim. *See Jackson*, 443 U.S. at 319. We overrule Gonzales's first issue.

## IV.    TAMPERING WITH EVIDENCE

By his second issue, Gonzales argues the evidence is insufficient to show he had knowledge of a pending investigation or that he concealed a firearm from investigation. Gonzales states, "Hypothetically only, if [Gonzales] did possess a firearm on this day, and discarded it prior to speaking with [Guerra], then [Gonzales] did not know there was a pending criminal investigation when he discarded the firearm."

A hypothetically correct jury charge consistent with the indictment would instruct the jury to find Gonzales guilty of tampering with evidence if: (1) knowing that a murder investigation was pending, (2) he intentionally or knowingly concealed a firearm, (3) with

6

intent to impair its availability as evidence in the investigation. *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *Stahmann v. State*, 602 S.W.3d 573, 576 (Tex. Crim. App. 2020). A person has knowledge of the commission of a murder where that person is aware at the time of his alleged acts that someone intentionally or knowingly caused the death of another individual. *See Barron v. State*, 629 S.W.3d 557, 563 (Tex. App. 2021). Proof of actual concealment "requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation." *Stahmann*, 602 S.W.3d at 581. A person acts with the intention to impair the availability of the evidence in a subsequent investigation or proceeding related to the offense when it is the person's conscious objective or desire to impair the availability of the evidence. *See* TEX. PENAL CODE ANN. § 6.03(a).

Here, the crime scene location was conclusively established by eye-witness testimony as well as circumstantial evidence. Margaret and Michael heard gunshots, and Doria suffered multiple gunshot wounds. Law enforcement arrived immediately after the shooting, searched the area with a K-9, but no weapon was recovered at the scene.[1] Thus, a jury could have concluded that Gonzales removed with weapon "with intent to impair its availability as evidence." *See id.*

Furthermore, Margaret identified a single suspect leaving the scene on foot, which she identified as Gonzales. Video surveillance depicts Gonzales physical presence near the scene of the shooting at the approximate time of the shooting while holding his waistband. There was evidence that Gonzales tested positive for GSR on both hands. Thus, a rational jury could reasonably infer Gonzales possessed the firearm used to shoot

---

[1] Gonzales lived a mere three blocks from the crime scene.

7

Doria and concealed the weapon to hinder the investigation. *See Stahmann*, 602 S.W.3d at 581 (providing that proof of actual concealment "requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation"); *Barron*, 629 S.W.3d at 562 ("circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt").

Gonzales generally states that there was no evidence he "concealed" the firearm. However, Gonzales did not need to be observed concealing the firearm. *See* TEX. PENAL CODE ANN. § 37.09(a)(1). That his effort in concealing the firearm was ultimately successful matters little; the factfinder had before it some evidence from which it could legitimately deduce that Gonzales concealed the firearm shortly after firing it. *See Gaitan v. State*, 393 S.W.3d 400, 402 (Tex. App.—Amarillo 2012, pet. ref'd). Additionally, there was evidence that he knew an investigation was pending because Guerra testified that she called Gonzales shortly after the murder, informed him law enforcement was looking for him, and asked him to turn himself in. *See Barron*, 629 S.W.3d at 563.

"Our task under the pertinent standard of review is to defer to what a factfinder could legitimately infer from the evidence." *Gaitan*, 393 S.W.3d at 402. Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence exists to prove beyond a reasonable doubt that Gonzales was aware that a murder had been committed, that he actually concealed the murder weapon, and that he did so intending to impair the availability of it as evidence in a subsequent investigation. *See* TEX. PENAL CODE ANN. § 37.09(a)(1); *Jackson*, 443 U.S. at 319. We overrule his second issue.

## V.    UNLAWFUL POSSESSION OF A FIREARM BY A FELON

By his third issue, Gonzales argues that there is insufficient evidence he "possessed" a firearm in violation of § 46.04 of the penal code. A hypothetically correct jury charge would instruct the jury to find Gonzales guilty of unlawful possession of a firearm by a felon if he: (1) knowingly or intentionally possessed a firearm (2) after conviction and before the fifth anniversary of his release from confinement. *See* TEX. PENAL CODE ANN. § 46.04 (a)(1). Gonzales only challenges the first element.

"If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm." *James v. State*, 264 S.W.3d 215, 218–19 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). As previously discussed, the evidence at trial established that Gonzales committed murder with a firearm and therefore exclusively possessed the firearm so to support his conviction for unlawful possession of a firearm by a felon. *See id.*; *see also Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.) (providing that the State can meet its burden with direct or circumstantial evidence as long as it establishes the appellant's connection with the firearm was more than fortuitous). The jury could have inferred that, having used a firearm in a murder, Gonzales intentionally or knowingly had exclusive possession of the firearm. Gonzales was convicted of a felony in 2008 and released in 2020, and he does not dispute this fact. Therefore, there was sufficient evidence that Gonzales was in possession of a firearm prior to the fifth anniversary of his release from confinement. *See* TEX. PENAL CODE ANN. § 46.04(a)(1).

Reviewing all the evidence in the light most favorable to the verdict, we conclude a rational factfinder could have found all the elements of unlawful possession of a firearm

by a felon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We overrule Gonzales's third issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
10th day of July, 2025.