COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| PETER MANUEL CANDELARIA, | § | |
| Appellant, | § | No. 08-20-00013-CR |
| | § | Appeal from the |
| v. | § | |
| | § | 118th District Court |
| THE STATE OF TEXAS, | § | |
| | § | of Howard County, Texas |
| Appellee. | § | |
| | § | (TC#15,561) |
| | § | |

## <u>O P I N I O N</u>

Appellant, Peter Manuel Candelaria, appeals his conviction of aggravated assault on a public servant, to-wit: Rory Gammons. TEX. PENAL CODE § 22.01(b).[1] In a single issue, Appellant challenges his conviction, asserting the evidence is legally insufficient. We affirm.

## BACKGROUND
### *Factual Background*

---

[1] Appellant was charged with seven offenses arising out of a single criminal action. At trial, the State filed a motion to join all seven offenses, which was granted. Appellant challenges his conviction in seven separate appeals—08-20-00007-CR, 08-20-00008-CR, 08-20-00009-CR, 08-20-00010-CR, 08-20-00011-CR, 08-20-00012-CR, and 08-20-00013-CR. Carrying forward Appellant's individual structure, we address each appeal separately. This particular appeal solely addresses appellate cause number 08-20-00013-CR, which involves the offense of aggravated assault on a public servant, to-wit: Rory Gammons. Additionally, this case was transferred from Eastland Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Eastland Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

The Big Spring Police Department had actively been attempting to locate and arrest Appellant for outstanding warrants. On the morning of December 28, 2018, Sergeant Steve Henry and Investigator Dustin Thomas conducted surveillance at a known residence of Appellant. Sergeant Henry and Investigator Thomas sat and surveilled from their respective unit vehicles— unmarked trucks equipped with red and blue lights, sirens, and radio. Based on information the officers had, they believed Appellant drove a burgundy or red Buick, and knew the license plate number. After not detecting activity, the officers took their lunch break and left the location. After lunch, Investigator Thomas returned to the location and notified Sergeant Henry that he detected movement; Appellant was "getting in and out of the house and to the vehicle." Sergeant Henry was in communication with Investigator Thomas while en route to the surveilled address when he detected the burgundy Buick and positively identified the driver as Appellant. Sergeant Henry then pulled up behind Appellant, activated the emergency lights of his undercover unit and notified dispatch of the pursuit. Appellant continued to accelerate, ran at least two stop signs, and at one point, drove in the wrong direction on a one-way street. The vehicle then stopped, and two individuals exited the vehicle—Appellant and a female. Appellant ran away and a foot pursuit ensued.

Several law enforcement officers responded to the scene upon learning of the pursuit via radio-dispatch and a search for Appellant followed. Investigator Thomas searched an alleyway and ultimately found Appellant hiding inside of a dumpster holding a firearm to his head. After confirming Appellant was armed and alerting the others, the officers all took cover. The situation morphed into what the officers described as a "standoff" that lasted over two hours. The officers involved in the standoff include: Chris Dominguez, Steve Henry, Chris Mahurin, Dustin Thomas,

2

Marc Thomas, and Rory Gammons—who are all alleged, individual victims of Appellant's respective convictions for aggravated assault on a public servant. At the time Appellant opened fire, the approximate locations of the officers were as follows: Investigator Dustin Thomas, Detective Dominguez, and Investigator Marc Thomas all standing side by side in very close proximity to one another. Lieutenant Mahurin was located a few feet north of and parallel to the aforementioned officers. Investigator Gammons was located just behind and west of Detective Dominguez.

After Appellant opened fire in the direction of the officers, Sergeant Marcus Thomas returned fire and shot three rounds, one of which struck Appellant's hand. Investigator Angelica Wilkins, a certified law enforcement negotiator, eventually convinced Appellant to surrender and exit the dumpster. A 9-millimeter pistol was retrieved from Appellant, and three empty shell casings from that pistol were later found. Appellant was arrested and taken to a hospital where he received medical treatment for his injury.

It is uncontested that during the standoff, Appellant refused to obey commands, and threatened his own life and the officers' lives; Appellant made clear he was either going to shoot himself once he was found, or the officers would have to kill him because he was not going back to prison—a tactic commonly known as "suicide by cop." The testimony, however, from each respective officer, varies in regard to the number of shots heard or seen fired from Appellant's pistol.

### *Procedural Background*

Appellant was charged with aggravated assault on a public servant, to-wit: Rory Gammons. The jury found Appellant guilty and sentenced him to the Institutional Division of the Texas Department of Criminal Justice for a term of forty years. This appeal followed.

**DISCUSSION**

In a single issue, Appellant seeks reversal of his conviction, asserting the evidence is legally insufficient. We disagree.

### Standard of Review and Applicable Law

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In *Brooks*, the Texas Court of Criminal Appeals held the only standard a reviewing court should apply when examining the sufficiency of the evidence is the legal sufficiency standard articulated in *Jackson*, which requires affording deference to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010).[2] The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v.*

---

[2] Appellant incorrectly asserts a *factual* insufficiency claim; the court in *Brooks* abandoned the factual sufficiency standard, codifying it to a standard of legal sufficiency. 323 S.W.3d at 915 (Cochran, J., concurring op.)("To declare the evidence factually insufficient necessarily turns an appellate judge, viewing only the cold written record, into a self-appointed thirteenth juror with absolute veto power over the twelve citizens who actually saw the witnesses, heard the evidence, and reached a rational, reasonable verdict.").

*State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014) (*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

A person commits assault if the person intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2). A person commits aggravated assault on a public servant if assault is committed as defined in Section 22.01, and the person uses or exhibits a deadly weapon during the commission of the assault against a person whom the actor knows is a public servant while the public servant is lawfully discharging an official duty. TEX.PENAL CODE ANN. § 22.02(a)(2), 22.02(b)(2)(B).

5

As applicable to the offense of aggravated assault on a public servant in this case, a hypothetically correct jury charge would ask whether Appellant: (1) intentionally or knowingly; (2) threatened another with imminent bodily injury by use of a deadly weapon; (3) against a person whom he knew was a public servant while the public servant was lawfully discharging an official duty. *Id*.

## *Analysis*

In the instant case, Deputy Gammons of the Howard County Sherriff's Office learned of the chase involving Appellant via radio and dispatched to assist the Big Spring Police Department. Before departing, Deputy Gammons notified his superior, Sergeant Thomas, and the two put on their plated department vests that read "Sheriff" across the front and back. While en route to the scene, Deputy Gammons and Sergeant Thomas heard via radio that Appellant was now on foot and was located in an alleyway. Upon arrival, Deputy Gammons heard a gunshot and exited the patrol unit. Having confirmed Appellant was armed and inside of a dumpster, Deputy Gammons and Sergeant Thomas armed themselves and took cover with the other officers in the alleyway. When asked to describe what he saw and heard in the alleyway as he took cover, in close proximity to the dumpster, Deputy Gammons explained:

> A. We're trying to get [Appellant] out of the Dumpster. He's refusing to come out. There's a lot of yelling going on and I can't say for sure what all was being said.
> And during the course of the yelling and trying to get [Appellant] out of the Dumpster, a gun is displayed from the large Dumpster
>
> Q. A gun is displayed?
>
> A. Yes, sir.
>
> Q. Okay. Is it pointing at anything or can you tell?
>
> A. It's pointed at all of us that are standing to the west of the Dumpster.

6

Q. Is it stationary? Is it moving?

A. It comes out and up, reaches over, and then just kind of scans, and it's pointed in the area of all of us officers standing there.

Q. Okay. So, essentially, you had this group of officers, three in the front, and you're sort of behind them and to the -- to the left, I guess?

A. Yes, sir.

Q. And this gun comes out and it's moving around out of the Dumpster; is that right?

A. Yes, sir.

.            .            .

Q. Was the gun ever pointed at you, or could you tell?

A. It was pointed at all of us.

Q. Essentially everybody in the west end of the alley?

A. Yes, sir.

Q. Did that gun discharge?

A. I did not see a discharge, but I heard a pistol round.

Q. You heard a pistol round?

A. Yes, sir.

Q. And how did that make you feel? How did you feel about that?

A. I was scared. I was scared for myself and everybody that was standing beside me or around me.

Q. Having seen the pistol pointed and the way it was pointed, did you have an impression on who it was pointed at?

A. Nobody in particular. It was just pointed at all of us. I assumed, the way he was moving it, at any time it was fired it could have hit any of us.

After Appellant was shot and later surrendered, Deputy Gammons rode in the ambulance

7

with Appellant and testified to the following:

Q. Let me ask you, did you hear anything uttered by [Appellant] while you were in the ambulance ride?

A. Not in the ambulance ride. Once we arrived at the hospital, he was asked a specific question by me. They were needing to run an IV, and he was going to have to be unhandcuffed. And I asked him if we were going to have any further problems if we unhandcuffed him, and he made the statement that he was going to reach for my gun.

Q. And he told you that from the hospital?

A. Yes, sir.

Q. How did you take that?

A. That he was still determined he was going to harm somebody.

Deputy Gammons further discussed the standoff, describing he heard three gunshots come from the area of the dumpster. Appellant himself also testified and admitted to firing his pistol at least three times. The following exchange between Appellant and the prosecutor occurred:

Q. Were you attempting to frighten the officers away?

A. Yes. I wanted them to get away from me.

Q. So your intent was to threaten them by firing that weapon?

A. To scare them, yes.

Appellant argues the testimony is to confusing, conflicting, and unreliable to support his conviction. The State counters by asserting testimonial conflicts present issues of fact and credibility for the jury to decide. We agree. The trier of fact is the sole judge of the weight and credibility of the evidence and we must we defer to that resolution. *Dobbs*, 434 S.W.3d at 170.

Based on the evidence, the following testimony and the reasonable inferences drawn therefrom, we deduce a rational jury could have concluded Appellant: (1) intentionally or

8

knowingly; (2) threatened Rory Gammons with imminent bodily injury; (3) knowing he was a public servant while lawfully discharging an official duty. TEX.PENAL CODE ANN. §§ 22.01, 22.02. The evidence is legally sufficient to support Appellant's conviction. Appellant's sole issue is overruled.

## CONCLUSION

For these reasons, we affirm.

April 23, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)