COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PETER MANUEL CANDELARIA, | § | |
| | | No. 08-20-00012-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 118th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Howard County, Texas |
| Appellee. | § | |
| | | (TC#15,561) |
| | § | |

## OPINION

Appellant, Peter Manuel Candelaria, appeals his conviction of aggravated assault on a public servant, to-wit: Marc Thomas. TEX.PENAL CODE ANN. § 22.02(b)(2)(B).[1] In a single issue, Appellant challenges his conviction, asserting the evidence is legally insufficient. We affirm.

### BACKGROUND
*Factual Background*

---

[1] Appellant was charged with seven offenses arising out of a single criminal action. At trial, the State filed a motion to join all seven offenses, which was granted. Appellant challenges his conviction in seven separate appeals—08-20-00007-CR, 08-20-00008-CR, 08-20-00009-CR, 08-20-00010-CR, 08-20-00011-CR, 08-20-00012-CR, and 08-20-00013-CR. Carrying forward Appellant's individual structure, we address each appeal separately. This particular appeal solely addresses appellate cause number 08-20-00012-CR, which involves the offense of aggravated assault on a public servant, to-wit: Marc Thomas. Additionally, this case was transferred from Eastland Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Eastland Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

The Big Spring Police Department had actively been attempting to locate and arrest Appellant for outstanding warrants. On the morning of December 28, 2018, Sergeant Steve Henry and Investigator Dustin Thomas conducted surveillance at a known residence of Appellant. Sergeant Henry and Investigator Thomas sat and surveilled from their respective unit vehicles— unmarked trucks equipped with red and blue lights, sirens, and radio. Based on information the officers had, they believed Appellant drove a burgundy or red Buick, and knew the license plate number. After not detecting activity, the officers took their lunch break and left the location. After lunch, Investigator Thomas returned to the location and notified Sergeant Henry that he detected movement; Appellant was "getting in and out of the house and to the vehicle." Sergeant Henry was in communication with Investigator Thomas while en route to the surveilled address when he detected the burgundy Buick and positively identified the driver as Appellant. Sergeant Henry then pulled up behind Appellant, activated the emergency lights of his undercover unit and notified dispatch of the pursuit. Appellant continued to accelerate, ran at least two stop signs, and at one point, drove in the wrong direction on a one-way street. The vehicle then stopped, and two individuals exited the vehicle—Appellant and a female. Appellant ran away and a foot pursuit ensued.

Several law enforcement officers responded to the scene upon learning of the pursuit via radio-dispatch and a search for Appellant followed. Investigator Thomas searched an alleyway and ultimately found Appellant hiding inside of a dumpster holding a firearm to his head. After confirming Appellant was armed and alerting the others, the officers all took cover. The situation morphed into what the officers described as a "standoff" that lasted over two hours. The officers involved in the standoff include: Chris Dominguez, Steve Henry, Chris Mahurin, Dustin Thomas,

2

Marc Thomas, and Rory Gammons—who are all alleged, individual victims of Appellant's respective convictions for aggravated assault on a public servant. At the time Appellant opened fire, the approximate locations of the officers were as follows: Investigator Dustin Thomas, Detective Dominguez, and Investigator Marc Thomas all standing side by side in very close proximity to one another. Lieutenant Mahurin was located a few feet north of and parallel to the aforementioned officers. Investigator Gammons was located just behind and west of Detective Dominguez.

After Appellant opened fire in the direction of the officers, Sergeant Marcus Thomas returned fire and shot three rounds, one of which struck Appellant's hand. Investigator Angelica Wilkins, a certified law enforcement negotiator, eventually convinced Appellant to surrender and exit the dumpster. A 9-millimeter pistol was retrieved from Appellant, and three empty shell casings from that pistol were later found. Appellant was arrested and taken to a hospital where he received medical treatment for his injury.

It is uncontested that during the standoff, Appellant refused to obey commands, and threatened his own life and the officers' lives; Appellant made clear he was either going to shoot himself once he was found, or the officers would have to kill him because he was not going back to prison—a tactic commonly known as "suicide by cop." The testimony, however, from each respective officer, varies in regard to the number of shots heard or seen fired from Appellant's pistol.

### Procedural Background

Appellant was charged with aggravated assault on a public servant, to-wit: Dustin Thomas. The jury found Appellant guilty and sentenced him to the Institutional Division of the Texas Department of Criminal Justice for a term of forty years. This appeal followed.

## DISCUSSION

In a single issue, Appellant seeks reversal of his conviction, asserting the evidence is legally insufficient. We disagree.

### *Standard of Review and Applicable Law*

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In *Brooks*, the Texas Court of Criminal Appeals held the only standard a reviewing court should apply when examining the sufficiency of the evidence is the legal sufficiency standard articulated in *Jackson*, which requires affording deference to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010).[2] The critical inquiry in a legal sufficiency challenge is whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

When reviewing the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v.*

---

[2] Appellant incorrectly asserts a *factual* insufficiency claim; the court in *Brooks* abandoned the factual sufficiency standard, codifying it to a standard of legal sufficiency. 323 S.W.3d at 915 (Cochran, J., concurring op.)("To declare the evidence factually insufficient necessarily turns an appellate judge, viewing only the cold written record, into a self-appointed thirteenth juror with absolute veto power over the twelve citizens who actually saw the witnesses, heard the evidence, and reached a rational, reasonable verdict.").

*State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). A lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004). We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume the fact finder resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014) (*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

A person commits assault if the person intentionally or knowingly threatens another with imminent bodily injury. TEX.PENAL CODE ANN. § 22.01(a)(2). A person commits aggravated assault on a public servant if assault is committed as defined in Section 22.01, and the person uses or exhibits a deadly weapon during the commission of the assault against a person whom the actor knows is a public servant while the public servant is lawfully discharging an official duty. TEX.PENAL CODE ANN. § 22.02(a)(2), 22.02(b)(2)(B).

5

As applicable to the offense of aggravated assault on a public servant in this case, a hypothetically correct jury charge would ask whether Appellant: (1) intentionally or knowingly; (2) threatened another with imminent bodily injury by use of a deadly weapon; (3) against a person whom he knew was a public servant while the public servant was lawfully discharging an official duty. *Id.*

### *Analysis*

In the instant case, Sergeant Thomas of the Howard County Sherriff's Office learned of the chase involving Appellant and dispatched to assist the Big Spring Police Department. While en route to the scene, Sergeant Thomas heard via radio that Appellant was now on foot. Sergeant Thomas and Deputy Gammons began to drive around the area looking for someone who matched the given description. After searching to no avail, the officers parked their patrol unit then heard a gunshot. Sergeant Thomas secured his patrol rifle from the backseat. With his rifle in hand, Sergeant Thomas, along with Deputy Gammons, exited the patrol unit and met with Investigator Dustin Thomas and Lieutenant Mahurin in the alleyway; the officers all took cover. Sergeant Thomas recalled saying something to Appellant about coming out of the dumpster, and not long after, saw Appellant's gun come up over the side of the dumpster. He saw Appellant's gun cycle and then Sergeant Thomas used his rifle to fire three rounds. One of the rounds struck Appellant's hand. When asked to describe what he saw and heard after opening fire, Sergeant Thomas explained:

Q. Now, [Appellant's] gun cycling, where was it pointed when you saw it cycle?

A. Towards myself and Detective Thomas and the other officers that were --

Q. The group of officers on the west end?

6

A. Yes.

Q. From the sounds of it with all these officers on the west end of that alley, it's kind of a target-rich environment?

A. Yes, sir.

.                    .                    .

Q. When you saw that gun come around, you said things got bigger and you put a hole, like -- what did you mean?

A. In situations like that it's -- the times before that I've had a gun pointed at me, it's -- you know, it can -- the barrel is maybe this big (*indicating*); but when your adrenaline gets to going in a heated situation, the barrel looks bigger. You know, it's just -- everything -- it just intensifies, like.

Q. And that gun was pointed at you?

A. Yes.

Q. How did that make you feel?

A. I feared for my life, feared for other people's lives there.

Sergeant Thomas further discussed the standoff, describing he heard three gunshots come from the dumpster. Appellant himself also testified and admitted to firing his pistol at least three times. The following exchange between Appellant and the prosecutor occurred:

Q. Were you attempting to frighten the officers away?

A. Yes. I wanted them to get away from me.

Q. So your intent was to threaten them by firing that weapon?

A. To scare them, yes.

Appellant argues the testimony is to confusing, conflicting, and unreliable to support his conviction. The State counters by asserting testimonial conflicts present issues of fact and

7

credibility for the jury to decide. We agree. The trier of fact is the sole judge of the weight and credibility of the evidence and we must defer to that resolution. *Dobbs*, 434 S.W.3d at 170.

Based on the evidence, the following testimony and the reasonable inferences drawn therefrom, we deduce a rational jury could have concluded Appellant: (1) intentionally or knowingly; (2) threatened Marc Thomas with imminent bodily injury; (3) knowing he was a public servant while lawfully discharging an official duty. TEX.PENAL CODE ANN. §§ 22.01, 22.02. The evidence is legally sufficient to support Appellant's conviction. Appellant's sole issue is overruled.

## CONCLUSION

For these reasons, we affirm.


April 23, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)